UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

\* \* \*

| | |
|---|---|
| VINCENT FREEMAN, II, | Case No. 2:21-cv-01827-MMD-CSD |
| Plaintiff, | ORDER |
| v. | |
| FIELD SERVICE AGENTS, *et al.*, | |
| Defendants. | |

**I.   SUMMARY**

Plaintiff Vincent Freeman, II, brings this action under 42 U.S.C. § 1983 against Defendants Armando Lozano-Carrera and Milton Hsieh for events that occurred while Plaintiff was in the custody of the Clark County Detention Center ("CCDC") as a pretrial detainee. (ECF No. 14.) The Court adopted United States Magistrate Judge William G. Cobb's recommendation (ECF No. 48) to deny Defendants' motion for summary judgment over Defendants' objections. (ECF No. 51 ("Prior Order").) Before the Court are Defendants' motion for reconsideration (ECF No. 79) of the Prior Order and, in the alternative, motion for leave to file a new motion for summary judgment (ECF No. 80).[1] As further explained below, because Defendants fail to establish that its new video evidence could not have been discovered through due diligence, and alternatively because the video is not material and controlling in nature, the Court denies the motion for reconsideration. The Court also finds that Defendants are not entitled to qualified immunity at this stage because pertinent factual disputes remain. The Court further

---

[1]Both motions are identical in content. For the sake of consistency, the Court will cite to Defendants' motion for reconsideration (ECF No. 79) and corresponding exhibits throughout the order. Plaintiff responded (ECF No. 82), and Defendants replied (ECF No. 83.) Even though Defendants correctly point out that Plaintiff filed his opposition late, the Court has considered Plaintiff's opposition. (ECF No. 83 at 2-4.) In any event, the content of Plaintiff's opposition does not change the Court's analysis because it is not persuasive in nature.

denies the motion for leave to file a new motion for summary judgment because Defendants have not demonstrated good cause.

## II. FACTUAL AND PROCEDURAL BACKGROUND[2]

Plaintiff alleges that while he was a CCDC pretrial detainee, Defendants, who were officers present when Plaintiff was in court, attacked him in a courtroom holding cell in the Clark County Regional Justice Center ("RJC"). (ECF No. 14 at 1-3; ECF No. 79 at 5.) On August 5, 2016, Plaintiff appeared in the Las Vegas Justice Court, located in the RJC, for a court proceeding. (ECF No. 79-1 at 3, 9.) Defendants eventually removed Plaintiff from the courtroom and took him to an adjacent holding cell. (*Id.*)

Plaintiff alleges the following occurred in the holding cell. Without cause and in tandem, the two officers began to attack Plaintiff as he started to sit down in the courtroom holding cell. (*Id.* at 4) One of the Defendants immediately tried to cover Plaintiff's mouth as he choked Plaintiff, silencing his call for help. (*Id.*) The other Defendant held Plaintiff's legs while Plaintiff was in shackles and cuffs. (*Id.*) Plaintiff was not resisting or posing a threat to anyone. (*Id.*) The attack weighs heavily on Plaintiff because he watched one of the Defendants reach for the gun on his waist continuously without cause. (*Id.*) Plaintiff still suffers mentally and physically from the excruciating pain from his injuries, which affects his life and sleep. (*Id.*)

Defendants dispute Plaintiff's allegations and contend the following. Plaintiff had to be removed from the courtroom for being disruptive. (ECF No. 79 at 10.) Upon entering the holding cell, Plaintiff tossed his papers in such a way that his arm and fist almost hit Lozano-Carrera in the face. (*Id.* at 11.) Perceiving that as a physical escalation, Lozano-Carrera attempted to place Plaintiff on his stomach on the holding cell bench with Hsieh's assistance. (*Id.*) Plaintiff resisted, and Defendants eventually pulled Plaintiff off the bench onto the ground. (*Id.* at 12.) Hsieh secured Plaintiff's legs, at which point Defendants had Plaintiff immobilized. (*Id.*) Lozano-Carerra testified that he spoke to Plaintiff and calmed him down, Plaintiff complied, and Defendants walked out of the cell. (*Id.*)

---

[2]The following facts are undisputed unless otherwise noted.

On the same day that the incident occurred, Plaintiff filed a grievance with the Las Vegas Metropolitan Police Department ("LVMPD"), which oversaw Defendants in their official capacities. (ECF No. 79-5 at 2.) On August 10, 2016, LVMPD Sergeant Steven Williams received and reviewed Plaintiff's grievance. (ECF No. 79-11 at 3.) Sergeant Williams contacted the RJC and requested a video copy of the incident. (*Id.*) The next day, August 11, 2016, Sergeant Williams received the video and reviewed it. (*Id.*) LVMPD Lieutenant Kathryn Bussell also reviewed Plaintiff's grievance and the video recording of the incident. (ECF No. 79-12 at 3.) Lieutenant Bussell then spoke with Plaintiff about the incident and determined, after her review, that Plaintiff had been the sole cause of the altercation and that no policy violation had occurred. (*Id.* at 3-4.)

Starting in April 2018, Plaintiff brought this civil rights action for excessive force in violation of his Fourteenth Amendment rights. (ECF Nos. 1, 14.) On September 11, 2019, Defendants, through their counsel, asked LVMPD's General Counsel about the RJC holding cell video of the incident and whether it could be located and provided. (ECF No. 79-16 at 3.) The next day, Defendants received a response that the video was no longer available within LVMPD records. (*Id.*) Thereafter, Defendants requested the video from the RJC. (*Id.*) On September 27, 2019, Defendants received a response that there was no video from the August 5, 2016, court hearing or holding cell. (*Id.*) On or around September 14, 2020, Defendants contacted Sergeant Williams and Lieutenant Bussell to attempt to locate the video. (*Id.*) On or around September 15, 2020, Sergeant Williams confirmed that he was unable to locate the video. (*Id.*) Discovery closed on September 28, 2020. (ECF No. 42.) Lieutenant Bussell later advised, on December 21, 2021, that she had searched for the video back in September 2020 but was not able to locate it. (ECF No. 79-16 at 3.)

On December 22, 2020, Defendants moved for summary judgment, arguing that Plaintiff failed to exhaust his administrative remedies before filing suit. (ECF No. 45.) Magistrate Judge Cobb recommended that the Court deny Defendants' motion for summary judgment because Plaintiff had exhausted his administrative remedies. (ECF

No. 48.) The Court thereafter overruled Defendants' objection (ECF No. 49) to the recommendation, adopted Judge Cobb's recommendation, and denied Defendants' motion for summary judgment. (ECF No. 51.)

On December 28, 2021, Plaintiff filed a motion for sanctions for spoliation of evidence, alleging that Defendants failed to preserve the video for litigation. (ECF No. 69.) In preparing a response to the motion for sanctions, Defendants contacted the RJC twice on December 30, 2021, to attempt to obtain a declaration about its retention policy. (ECF No. 79-16 at 4.) On January 4, 2022, Defendants were informed that the RJC had located the video and that the video had not been saved by the date of the incident—August 5, 2016—but by the date that LVMPD had requested the video—August 10, 2016. (*Id.* at 5.) Defendants thereafter obtained the video on January 11, 2022. (*Id.*) Defendants now move to reconsider the Court's Prior Order primarily on the basis that the holding cell video constitutes newly discovered evidence. (ECF No. 79.)

### III.    LEGAL STANDARD

Reconsideration is an "extraordinary remedy" that should be used sparingly. *See Carroll v. Nakatani*, 342 F.3d 934, 945 (9th Cir. 2003). A motion to reconsider must set forth "some valid reason why the court should reconsider its prior decision" and set "forth facts or law of a strongly convincing nature to persuade the court to reverse its prior decision." *Frasure v. United States*, 256 F. Supp. 2d 1180, 1183 (D. Nev. 2003) (citation omitted). Reconsideration is appropriate if the Court "(1) is presented with newly discovered evidence, (2) committed clear error or the initial decision was manifestly unjust, or (3) if there is an intervening change in controlling law." *Sch. Dist. No. 1J v. ACandS, Inc.*, 5 F.3d 1255, 1263 (9th Cir. 1993) (citation omitted). But "[a] motion for reconsideration is not an avenue to re-litigate the same issues and arguments upon which the court already has ruled." *Brown v. Kinross Gold, U.S.A.*, 378 F. Supp. 2d 1280, 1288 (D. Nev. 2005) (citation omitted).

Motions to reconsider are generally left to the discretion of the district court. *See Herbst v. Cook*, 260 F.3d 1039, 1044 (9th Cir. 2001). A district court has discretion not to

consider arguments that were not raised until a motion for reconsideration without a good excuse for the delay. *See Rosenfeld v. U.S. Dep't of Justice*, 57 F.3d 803, 811 (9th Cir. 1995); *N.W. Acceptance Corp. v. Lynnwood Equip., Inc.*, 841 F.2d 918, 925-26 (9th Cir. 1988). Moreover, motions for reconsideration are not justified on the basis of new evidence that could have been discovered prior to a district court's ruling. *See Coastal Transfer Co. v. Toyota Motor Sales*, U.S.A., 833 F.2d 208, 212 (9th Cir. 1987).

## IV. DISCUSSION

The Court first addresses Defendants' motion for reconsideration of the Court's Prior Order on the grounds of newly discovered evidence and a new qualified-immunity argument. The Court then addresses Defendants' alternative request for leave to file a new motion for summary judgment.

### A. Newly Discovered Evidence

Defendants argue that the Court should reconsider its Prior Order because video evidence of the holding cell incident in which Plaintiff alleges Defendants used excessive force against him constitutes "newly discovered evidence." (ECF No. 79 at 5.) "In the Ninth Circuit, the party seeking reconsideration based on newly-discovered evidence must show the evidence: (1) is truly newly-discovered; (2) could not have been discovered through due diligence; and (3) is of such a material and controlling nature that it demands a probable change in the outcome." *United States v. Westlands Water Dist.*, 134 F. Supp. 2d 1111, 1131 n.45 (E.D. Cal. 2001) (citations omitted); *see also Coastal Transfer Co. v. Toyota Motor Sales, U.S.A.*, 833 F.2d 208, 211 (9th Cir.1987). "[F]ailure to file documents in an original motion or opposition does not turn the late-filed documents into newly discovered evidence." *See Sch. Dist. No. 1J.*, 5 F.3d at 1263. If the evidence was in the possession of the party before the judgment was rendered it is not newly discovered. *See Coastal Transfer*, 833 F.2d at 212.

#### 1. Truly Newly Discovered

First, Defendants argue that the holding cell video is newly discovered because it was discovered on January 11, 2022—about five and a half months after the Court issued

its Prior Order. (ECF No. 79 at 19.) The Declaration of Wendy Applegate, a paralegal employed by Defendants' counsel, corroborates that Defendants did not gain actual possession of the holding cell video from the RJC until January 11, 2022. (ECF No. 79-16 at 5.) Defendants therefore have satisfied the first prong of the "newly discovered evidence" standard.

### 2. Could Not Have Been Discovered Through Due Diligence

Second, Defendants argue that the video could not have been discovered through due diligence because of "circumstances beyond their control"—that is, the RJC's error in saving and archiving the video according to the date that LVMPD had requested the video for its internal investigation (August 10, 2016), not the date of the incident (August 5, 2016). (ECF No. 79 at 19.) Defendants argue that they exercised due diligence, through their counsel, in attempting to discover the holding cell video by: (1) requesting the video from LVMPD's General Counsel on September 11, 2019; (2) contacting the RJC for the video sometime between September 12, 2019 and September 27, 2019; and (3) contacting Sergeant Williams and Lieutenant Bussell who had reviewed the video around the time of the incident to determine if they could help locate the video on or around September 14, 2020. (*Id.* at 19-20; ECF No. 79-16 at 3.)

The Court disagrees with Defendants for the following reasons. Notably, Defendants only requested the holding cell video from the RJC *once*. (ECF No. 79-16 at 3.) Before that request, Defendants had requested the video from LVMPD's General Counsel knowing it "had been referenced in LVMPD's internal investigation." (ECF No. 79 at 19; ECF No. 79-16 at 3.) At that point, Defendants knew that the RJC was the original source of the video and that it had previously located and provided other LVMPD officers the video with no issue. (*Id.*) However, after receiving a negative response on September 27, 2019, Defendants did not inquire the RJC any further even though they had every opportunity to do so for at least a year until the five-time extended discovery deadline passed on September 28, 2020. (ECF No. 79-16 at 3; ECF No. 42.) In lieu of or in addition to contacting Sergeant Williams and Lieutenant Bussell on or around

September 14, 2020, Defendants could have easily contacted the RJC again. (ECF No. 79-16 at 3.)

Moreover, later in response to Plaintiff's motion for sanctions for spoliation of evidence (ECF No. 69), Defendants' counsel reached out to the RJC twice for a declaration about their video retention policy on December 30, 2021, which ultimately resulted in the RJC relocating the video five days later. (ECF No. 79 at 20; ECF No. 79-16 at 4-5.) That Defendants' follow-up requests were successful indicates that further reasonable, prompt inquiry could have resulted in discovery of the video prior to the Court's ruling on Defendants' motion for summary judgment. The Court therefore finds that Defendants have not satisfied the second prong in the analysis.

### 3. Material and Controlling in Nature

Lastly, even if Defendants could show that the video could not have been discovered with due diligence, Defendants cannot satisfy the final prong of the "newly discovered evidence" standard because genuine issues of material fact still remain. Defendants argue that the video is material and controlling in nature because it shows the officers did not use malicious or sadistic force on Freeman. The Court disagrees as explained below.

A claim for excessive force turns on whether force was applied in a good-faith effort to maintain or restore discipline, or whether it was applied maliciously and sadistically for the purpose of causing harm. *See Hudson v. McMillian*, 503 U.S. 1, 6-7 (1992) (citing *Whitley v. Albers*, 475 U.S. 312, 320-21 (1986)). In determining whether the use of force was wanton and unnecessary, the court may consider the need for application of force, the relationship between that need and the amount of force used, the threat reasonably perceived by the responsible officials, and any efforts made to temper the severity of a forceful response. *Id.* at 7. While an inmate need not have suffered a serious injury in order to bring an excessive force claim against a prison official, the Eight Amendment's prohibition on cruel and unusual punishments necessarily excludes from constitutional recognition *de minimis* uses of physical force. *Id.* at 9-10.

Plaintiff alleges that Defendants "attacked" him "without cause" as he began to sit down in a courtroom holding cell while handcuffed and shackled. (ECF No. 14 at 3-4.) One Defendant allegedly covered Plaintiff's mouth, choked him, and silenced his call for help, while the other Defendant allegedly held down Plaintiff's legs. (*Id.* at 4.) Plaintiff further alleges that he was not resisting or posing a threat to anyone and that he watched one of the Defendants reach for his gun continuously without justification. (*Id.*)

By contrast, Defendants contend that the application of force was necessary because Plaintiff had just been removed from the courtroom for being disruptive and that the "removal did not temper his behavior." (ECF No. 79 at 23.) Defendants also argue that they reasonably believed Plaintiff posed a threat when he "escalat[ed] the situation physically when he tossed his papers in such a way that his arm and fist almost hit Lozano in the face." (*Id.* at 25.) While the video does show that papers were thrown and Plaintiff entered the cell thereafter, it does not show whether Plaintiff had been disruptive in the courtroom. (ECF No. 79-9.) It further does not show whether Plaintiff almost hit Lozano-Carrera with his arm and fist. (*Id.*) Therefore, there are triable issues of fact as to the need for the application of force and the threat reasonably perceived by Defendants.

Defendants argue the relationship between the need for and amount of force used was "reasonable" because their use of force "calmed" Plaintiff down and "subdued" him long enough for another detainee and Defendants to exit. (ECF No. 79 at 24.) Defendants also claim that they did not strike or choke Plaintiff nor reach for their guns, as Plaintiff has alleged. (*Id.*) The video shows one of the Defendants, identified as Lozano-Carrera by Defendants' declarations (ECF No. 79-7 at 3; ECF No. 79-8 at 4), grabbing Plaintiff's upper body from behind, pushing him down onto the cell bench, and then holding him down with his full body on or over him, while the other Defendant, identified as Hsieh by Defendants' declarations (*id.*), appears to be positioned near Plaintiff's head and upper body. (ECF No. 79-9.) The video then shows Defendants bringing Plaintiff down to the floor, with Lozano-Carrera sitting on him, while Hsieh restrains Plaintiff's legs. (*Id.*) While the video does not show either Defendant choking Plaintiff or reaching for their guns, a

8

reasonable juror could find either to be possible given that it is impossible to make out where Hsieh's hands are while he was positioned near Plaintiff's head and upper body. (*Id.*) Viewing the evidence in the light most favorable to Plaintiff, the Court thus finds that there are genuine disputes of material fact as to the amount of force used and whether the relationship between the need for and amount of force used was reasonable.

Defendants also argue that Plaintiff's injuries, if any, are *de minimis*, pointing to Plaintiff's medical requests, Lieutenant Bussell's observations, and the video. (EFC No. 79 at 23.) Plaintiff's August 8, 2016, medical requests complained of "burning" skin, a "knot" in his neck, "scratches," and "welps [sic]." (ECF No. 79-15 at 2-3.) Shortly after the incident, Lieutenant Bussell observed "a small, healed scratch on the inner portion of [Plaintiff's] right arm" and "a scabbed rub mark on his left arm." (ECF No. 79-12 at 3; ECF No. 79 at 16.) Viewing this evidence of Plaintiff's injuries in the light most favorable to Plaintiff, a reasonable juror could find that Defendants used more than *de minimis* force.

Defendants further argue that the video shows that Plaintiff's injuries would likely have resulted from [Plaintiff's] resistance," were not "objectively intentional," and did not seem "to bother Plaintiff immediately after the use of force." (ECF No. 79 at 23.) While true that the video shows Plaintiff standing up and walking around the holding cell after Defendants' use of force, the video cannot substantiate Defendants' subjective claims, and therefore, there remain triable issues of fact as to the degree of force used and whether Defendants applied force maliciously to cause harm. (ECF No. 79-9.)

As to any efforts made to temper the severity of a forceful response, Defendants argue the video shows that Lozano-Carrera spoke to Plaintiff, calmed him down, and convinced him to turn on his stomach so Defendants could leave the holding cell. (ECF No. 79 at 25.) While these claims are consistent with Lozano-Carrera's testimony, the lack of audio on the video raises a triable issue of fact as to whether Defendants took such measures to reduce the severity of their response. (ECF No. 79-8 at 4; ECF No. 79-9.)

Accordingly, had the Court considered this evidence at the time of the Prior Order, it would have still denied summary judgment. The Court thus finds that the holding cell video is not of such a material and controlling nature that it demands a probable change in outcome, and therefore, Defendants have not demonstrated sufficient grounds for reconsideration based on newly discovered evidence.

### B.   New Argument on Qualified Immunity

Defendants also argue that they are entitled to qualified immunity and that no existing precedent shows that Defendants' conduct violated clearly established law. (ECF No. 79 at 25-26.) Defendants did not raise this argument to the Court in its motion for summary judgment and therefore are raising it for the first time in their motion for reconsideration. (ECF No. 45.) Defendants provide no reason why they could not have previously presented this argument to the Court and therefore fail to establish any good excuse for delay. (ECF No. 79 at 25-26.) The Court will nevertheless consider Defendants' belated qualified-immunity argument because such a determination may be dispositive.

"In determining whether a state official is entitled to qualified immunity in the context of summary judgment, [courts] consider (1) whether the evidence viewed in the light most favorable to the plaintiff is sufficient to show a violation of a constitutional right and (2) whether that right was 'clearly established at the time of the violation.'" *Sandoval v. Cnty. of San Diego*, 985 F.3d 657, 671 (9th Cir. 2021) (citing *Horton by Horton v. City of Santa Maria*, 915 F.3d 592, 599 (9th Cir. 2019)). Denying judgment as a matter of law is particularly appropriate where factual disputes remain that bear on an ultimate finding of qualified immunity. *See, e.g.*, *Torres v. City of Los Angeles*, 548 F.3d 1197, 1210-11 (9th Cir. 2008) (noting that where "facts material to the qualified immunity determination are in dispute," summary judgment is inappropriate).

First, for the same reasons discussed above, viewing the facts in the light most favorable to Plaintiff, a fact finder could conclude that Defendants used excessive force and violated Plaintiff's Fourteenth Amendment rights. Second, it was clearly established

at the time of the incident that a pretrial detainee has a right to be free from excessive force used maliciously and sadistically to cause harm. *See Hudson*, 503 U.S. at 6-7. Accordingly, the Court finds that Defendants are not entitled to qualified immunity at this stage. *See, e.g., Sandoval v. Las Vegas Metro. Police Dep't*, 756 F.3d 1154, 1160 (9th Cir. 2014) ("If 'genuine issue[s] of material fact exist[ ] that prevent [ ] a determination of qualified immunity at summary judgment, the case must proceed to trial.'") (citation omitted).

### C. Request for Leave to File a New Motion for Summary Judgment

In the alternative, Defendants move for leave to file a new motion for summary judgment. (ECF No. 79 at 2, 27.) Defendants' request comes about a year and a half after the final extended dispositive motions deadline passed on December 22, 2020. (EFC No. 44.) Defendants do not offer any argument in its motion as to why the Court should permit this beyond suggesting that its new video evidence be considered at this stage. (ECF No. 79 at 2, 27.)

Because Defendants are seeking leave to file an additional summary judgment motion after the Court entered a scheduling order and after the dispositive motions deadline expired (ECF No. 44), Rule 16(b)(4)'s "good cause" standard for modifying a scheduling order applies. The "good cause" standard of Rule 16(b) "primarily considers the diligence of the party seeking the amendment." *Johnson v. Mammoth Recreations, Inc.*, 975 F.2d 604, 609 (9th Cir. 1992). While the Court may consider prejudice to the nonmoving party as an additional reason to deny a motion, "the focus of the inquiry is upon the moving party's reasons for seeking modification." *Id.* "[C]arelessness is not compatible with a finding of diligence and offers no good reason for a grant of relief . . . . If [a] party was not diligent, the inquiry should end." *Id.* (citations omitted); *see also In re W. States Wholesale Nat. Gas Antitrust Litig.*, 715 F.3d 716, 738 (9th Cir. 2013), *aff'd sub nom. Oneok, Inc. v. Learjet, Inc.*, 575 U.S. 373 (2015) ("As in *Johnson*, the Plaintiffs here have failed to demonstrate good cause for their untimely motion to amend, and thus, the district court did not abuse its discretion in denying that motion.").

Defendants have not demonstrated good cause to amend the scheduling order permitting it to file another motion for summary judgment because, as discussed above, Defendants have not established that they were diligent in discovering the new evidence that is the basis of their request. Moreover, Defendants do not really make any direct arguments as to why the Court should amend the scheduling order. Nor do Defendants attempt to explain why it waited some five months to file its motion after the discovery of its new evidence. Accordingly, the Court denies Defendants' request for leave to file a new motion for summary judgment.

## V. CONCLUSION

It is therefore ordered that Defendants' motion for reconsideration (ECF No. 79) is denied.

It is further ordered that Defendants' motion for leave to file a new motion for summary judgment (ECF No. 80) is denied.

DATED THIS 31st Day of October 2022.

_____
MIRANDA M. DU
CHIEF UNITED STATES DISTRICT JUDGE